UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
UNITED STATES OF AMERICA            :
                                   :   Crim. No. 12-663 (NLH)
     v.                            :
                                   :
WILLIAM RENSING,                    :
                                   :   **OPINION**
                                   :
          Defendant.                :
_____:

**APPEARANCES**:

WILLIAM RENSING
# 63643-050
FCI PETERSBURG MEDIUM
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000
PETERSBURG, VA  23804

     *Pro Se*

DANIEL V. SHAPIRO
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
970 BROAD STREET
SUITE 700
NEWARK, NJ 07102

     *Counsel for the United States*


**Hillman**, **District Judge**

     Before the Court is William Rensing's ("Defendant") Motion for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A).  (ECF 32).  Also before the Court are Defendant's

motions to file further briefing and for extensions of time to file further briefing related to his compassionate release motion. (ECF 40, 42, 43). For the reasons expressed below, Defendant's motions will be denied.

**Background**

On December 6, 2012, Defendant pleaded guilty to a one-count indictment charging him with distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). (See ECF 20, 24). Thereafter, on May 23, 2013, this Court sentenced Defendant to a term of imprisonment of 210 months and a 10-year term of supervised release. (ECF 24). Defendant's release date is projected to be September 14, 2026.[1]

Defendant filed the instant pro se motion for compassionate release on March 29, 2021. (ECF 32). The Government filed a letter in opposition on May 13, 2021. (ECF 34). Separately, Defendant filed a motion for the Government to produce specific documents in relation to his motion. (ECF 39). Defendant then filed a reply brief on August 16, 2021. (ECF 41). Defendant filed two follow-up motions to file further briefing in support of his motion for compassionate release on September 2, 2021 and December 28, 2021. (ECF 42, 43). On March 17, 2022, the Court

---

[1] FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited May 16, 2022).

2

ordered the Government to respond to Defendant's further motions (ECF 47) and the Government did so on April 26, 2022. (ECF 50).[2] The Court considers Defendant's motions against this factual backdrop.

**Legal Standard**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons (the "BOP") to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)).

"Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release."

---

[2] On May 10, 2022, Defendant filed letter asking for permission to file a brief in response to the Government's April 26, 2022 letter. (ECF 51). Given the extensive submissions that the parties have already submitted, the Court finds that further briefing would be superfluous.

Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At the second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

**Discussion**

1. **Defendant has satisfied the exhaustion requirements**

Defendant applied to the BOP for release and his request was denied on February 22, 2021. (ECF 32 at 1). The Government concedes that Defendant has exhausted his administrative remedies. (ECF 34 at 2). Thus, the Court deems that threshold requirement to be satisfied.

2. **Defendant fails to establish "extraordinary and compelling" reasons for his release**

Defendant argues that his compassionate release is warranted because the need for him to care for his mother who is ill with end stage liver disease is an "extraordinary and compelling reason" justifying his release. (ECF 41 at 3; ECF 43 at 1). He also argues that his history as a smoker is also an

4

"extraordinary and compelling reason" justifying his release. (ECF 44 at 1).

The Government opposes Defendant's motions and contends that Defendant has not met his burden to show "extraordinary and compelling reasons" justifying his release. They argue that defendant has not met the standard to show an extraordinary and compelling family circumstance as contemplated by U.S.S.G. § 1B1.13's Application Notes. (ECF 34 at 3-4; ECF 50 at 2-3). They state that Defendant has not shown the incapacitation of his spouse or registered partner where Defendant would be the only available caregiver. (ECF 34 at 3-4; ECF 50 at 2-3). The Government underscores that the Application Notes to the Guidelines do not reference the illness of a parent as being a family circumstance that is cognizable as an "extraordinary and compelling reason." (ECF 50 at 2-3). They further argue that even if the Court considers the illness of a parent as cognizable, Defendant has not provided documentation that shows that his mother is incapacitated or that there are no other available caregivers. (Id.)

Defendant does not present "extraordinary and compelling" reasons for his release. The Court takes seriously Defendant's concerns about his mother's health and analyzes whether he has shown "extraordinary and compelling reasons for his release" accordingly. That said, the Court holds that Defendant has not

5

met that standard.  First, the Court finds instructive, although not determinative,[3] the current guidance by the Sentencing Commission as incorporated by § 3582(c).  Defendant has not pointed to evidence that his mother is incapacitated or that he is the only available caregiver which would militate toward release under § 3582(c)(1)(A).

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. U.S.S.G. § 1B1.13, cmt. n.1(C).  According to the Comment, applicable family circumstances include "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children [or] [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Id.

Courts in this district have looked to BOP Program Statement § 5050.50 for guidance on the meaning of

---

[3] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  That said, the Third Circuit has approved a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners. United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons.").

incapacitation and the showing a defendant must make to show that they are the sole available caregiver.  See United States v. Doolittle, 2020 WL 4188160, at *3 (D.N.J. July 21, 2020); United States v. Mason, No. 2:17-CR-191 (WJM), 2021 WL 2530781, at *1 n.1 (D.N.J. June 21, 2021).  The Program Statement makes clear that incapacitation refers to where an individual "cannot carry on any self-care and is totally confined to a bed or chair."  Doolittle, 2020 WL 4188160 at *3.  Further, a defendant making such argument has the responsibility to provide "a statement and verifiable medical documentation regarding the [family member's] incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the [incapacitated family member], and a statement and documentation regarding the inmate's release plan."  Id.

Defendant has not made such a showing.  Defendant has provided some scans of medical records for his mother, but he has not shown that she is completely confined to a bed or chair. (See ECF 41).  He has only made conclusory statements that she cannot care for herself.  Doolittle, 2020 WL 4188160 at *3. ("Doolittle has presented no medical documentation or other competent evidence demonstrating that his wife is incapacitated. He argues that she has difficulty handling daily tasks on her own and is desperate for him to return home, but there is no

7

indication that she is unable to care for herself or that she is immobile.").

Further, his statement that his sister-in-law is no longer caring for his mother is not backed by any documentation that she is completely unavailable and that there is no one else who can care for his mother.  United States v. Dunich-Kolb, No. CR 14-150 (KM), 2022 WL 580919, at *8 (D.N.J. Feb. 14, 2022) ("One common thread, whether relief is granted or denied, is the requirement that the prisoner be the *only* person available to provide care to a seriously ill relative.") (emphasis in the original).  While the Court is sympathetic to the difficulty that Defendant's mother's situation poses for his family it does not rise to the level of an "extraordinary and compelling reason" justifying release.

As alternative ground for his motion, Defendant mentions his history as a smoker as a basis to justify his release in light of the COVID-19 pandemic.  (ECF 44 at 1).  The Court cannot say that history as a smoker falls into the same category as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances."  U.S.S.G. § 1B1.13, cmt. n.1(A).

8

It also cannot say that Defendant suffers from conditions that substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover." Id. While the Centers for Disease Control and Prevention have identified smoker status as a risk factor associated with COVID-19,[4] courts have held that the mere fact that a defendant has one or more of those conditions is not enough to warrant compassionate release. United States v. Brashear, 2021 WL 5239119, at *3 (D.N.J. Nov. 10, 2021) ("Despite the risk of COVID-19, multiple decisions in the Third Circuit, and multiple decisions in this District, have denied compassionate release to inmates suffering from obesity, hypertension, and/or other health issues."); States v. Caraballo, No. CR 14-0255, 2022 WL 60697, at *6 n.5 (D.N.J. Jan. 6, 2022) ("Defendant's status as a former cigarette smoker does not change the Court's conclusion that he fails to show any extraordinary and compelling reasons for a sentence reduction.").

Defendant has been fully vaccinated against COVID-19. (ECF 34 at 2). Further, FCI Petersburg Medium's mitigation efforts at controlling the spread of the coronavirus appear to be

---

[4] CENTERS FOR DISEASE CONTROL AND PREVENTION, COVID-19, PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 14, 2022).

effective. Currently, FCI Petersburg Medium has one active inmate case and no staff positive tests.[5] Over the course of the pandemic, one inmate has died as a result of infection by COVID-19, and 249 inmates have recovered from positive infections.[6] Id.

According to the BOP, 2,241 inmates out of a population of 2,436 at FCC Petersburg have been fully vaccinated.[7][8] Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FCC Petersburg weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who has not shown that he is unable to manage any health conditions related to his former smoker status at FCI Petersburg Medium, does not present "extraordinary and compelling reasons" supporting his release on the basis of his health. He simply has not shown how he is at an increased risk

---

[5] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited May 14, 2022).

[6] Id.

[7] Id.

[8] FEDERAL BUREAU OF PRISONS, OUR LOCATIONS, https://www.bop.gov/locations/list.jsp (last visited May 14, 2022). FCC Petersburg is comprised of FCI Petersburg Medium and FCI Petersburg Low.

10

of adverse health outcomes in the prison environment in light of COVID-19.

### 3. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction. Here, they do not.

Defendant principally argues that his accomplishments while in jail working and doing correspondence bible study support his release. (ECF 38 at 3; ECF 41 at 11). He also states that the BOP's internal system for predicting recidivism has assessed him to be a low risk. (ECF 38 at 3). He does not otherwise address how the calculus of the § 3553(a) factors has changed. This argument does not tilt a full balancing of the § 3553(a) factors in his favor.

The Government argues the § 3553(a) factors weigh toward denying Defendant's motion. They note that Defendant pled guilty to distributing child pornography after being convicted of a sexual assault on a victim less than 13 years old where Defendant was at least four years older than the victim. (ECF 34 at 5). They further argue the time in prison that Defendant has thus far served is not enough to reflect the seriousness of the offense and promote deterrence. (Id. at 5-6).

11

The Court agrees with the Government and sees no reason to disturb the sentence it previously imposed. Specifically, distribution of child pornography is a particularly heinous and damaging crime that affects its victims for years after the commission of the offense. 18 U.S.C. § 3553(a)(1). Defendant's offense was sophisticated in that he used dedicated software to download these illicit images. Id. at § 3553(a)(2)(A).

Further, the Court finds that general deterrence of this kind of crime is paramount where a lengthy sentence may deter others who might otherwise access and expand the market for child pornography. Id. at § 3553(a)(2)(B).

Finally, given that Defendant committed the instant offense while on probation for a different child sex abuse crime, the need for specific deterrence and public protection remain concerns even after considering the BOP's risk assessment. Id. at § 3553(a)(2)(B) and (C).

In sum, neither Defendant's family circumstances nor the advent of COVID-19 changes the balance in Defendant's specific situation where he has not shown any "extraordinary and compelling reasons" justifying his release or that there has been a material difference in the § 3553(a) factors that animated the original sentence.

**Conclusion**

For the reasons set forth above, Defendant's Motion for Compassionate Release (ECF 32) and motions requesting to file further briefing (ECF 40, 42, 43) will be denied.[9]

An accompanying Order will issue.

Dated: May 19, 2022               s/   Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

[9] Implicit in this denial is a denial of Defendant's request for counsel to be appointed.  Defendant is not entitled to counsel on a compassionate release motion, and it would be a waste to appoint counsel where the motion is futile.  United States v. Bess, No. CR 16-522 (SDW), 2021 WL 5277201, at *3 n.6 (D.N.J. Nov. 12, 2021) ("Defendants do not have a constitutional right to appointment of counsel when seeking compassionate relief.  Although a district court has the discretion to appoint counsel, where an underlying motion for compassionate release will fail, appointing counsel would be futile.") (internal citations and quotation marks omitted).

13